**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| BEACON HOSPITALITY, LLC<br><br>Plaintiff,<br><br>v.<br><br>BUFFALO WILD WINGS, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO.: 1:26-CV-00909** |

## COMPLAINT AND JURY DEMAND

1. Plaintiff, Beacon Hospitality, LLC, by and through its undersigned counsel, complains against Defendant, Buffalo Wild Wings, Inc., for damages arising from Defendant's unlawful behavior including Defendant's infringement of Beacon Hospitality, LLC's incontestable United States Trademark Registration No. 2,746,233 for WILD WILLY'S BURGERS in connection with restaurant services through use of the name WILD BURGER also in connection with restaurant services. Defendant's use of WILD BURGER has caused actual confusion among Plaintiff's and Defendant's customers, causing them to believe Plaintiff is the source of food originating from WILD BURGER. Plaintiff brings this action for damages and injunctive relief to prevent further harm as a result of Defendant's infringement, unfair competition, and unlawful acts.

## PARTIES, JURISDICTION, AND VENUE

2. The Plaintiff, Beacon Hospitality, LLC, is a Maine limited liability company with a principal office mailing address at PO Box 208, York Harbor, ME 03911.

3. The Defendant, Buffalo Wild Wings, Inc., is a Minnesota corporation with a principal executive office address at 3 Glenlake Parkway, Atlanta, GA 30328.

4. This is a civil action for federal trademark infringement under section 32 of the Lanham Act, 15 U.S.C. §1114 and for false association and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A). This Court has subject matter jurisdiction over these claims under those acts and also pursuant to 15 U.S.C. §1121(a), 28 U.S.C. § 1331, 1338(a) and (b), and § 1367(a) because this action involves the Lanham Act.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District, including Defendant's use of the Infringing Mark in connection with restaurant services offered to consumers in this District from Defendant's Nashua and Rochester, New Hampshire locations, and the actual consumer confusion occurring within this District as alleged in Paragraphs 18, 19, 36-42, and 51-59 below. Venue is also proper under 28 U.S.C. § 1391(b)(3) to the extent Defendant is subject to this Court's personal jurisdiction with respect to this action and no other district would be a proper venue.

6. This Court has personal jurisdiction over Defendant pursuant to N.H. Rev. Stat. Ann. § 510:4 and the Due Process Clause of the Fourteenth Amendment. Defendant has purposefully directed and conducted substantial activities within this District, including by owning, operating, licensing, and/or franchising Buffalo Wild Wings restaurants located within this District, including without limitation at 310 Daniel Webster Highway, Nashua, New Hampshire, and 160 Washington Street, Rochester, New Hampshire. Defendant also offers and sells restaurant services within this District under the Infringing Mark through third-party online delivery platforms, directing those services to consumers in this District. Plaintiff's claims arise out of and relate to Defendant's forum-directed conduct, including Defendant's use of the Infringing Mark in connection with restaurant services provided to consumers in this District and

the actual consumer confusion occurring in this District, as further alleged in Paragraphs 18, 19, 36-42, and 51-59 below. The exercise of personal jurisdiction over Defendant is reasonable and comports with traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

7. Plaintiff is the current owner of all rights, title, and interest to United States Trademark Registration No. 2,746,233 for WILD WILLY'S BURGERS as used in connection with "restaurant services" in International Class 043 (the "Registered Mark"). A true and correct copy of the Certificate of Registration is attached as Exhibit 9.

8. Plaintiff obtained all rights in and to the Registered Mark by assignment from Appis, Inc. recorded at the United States Patent and Trademark Office ("USPTO") on June 1, 2023, as shown by Reel/Frame No. 8134/0758.

9. Appis, Inc. had obtained all rights in and to the Registered Mark from Wild Willy's Holding Company, Inc. by assignment recorded at the USPTO on August 1, 2018, as shown by Reel/Frame No. 6420/0465.

10. Wild Willy's Holding Company, Inc. had obtained all rights in and to the Registered Mark from Wild Willy's Burgers, Inc. by change of name recorded at the USPTO on December 1, 2004, as shown by Reel/Frame No. 3003/0231.

11. Wild Willy's Burgers, Inc. was the original owner of the mark WILD WILLY'S BURGERS and filed the application for the Registered Mark on December 7, 2001.

12. The Registered Mark was registered on August 5, 2003.

13. The Registered Mark obtained incontestability status under §15 of the Trademark Act on March 28, 2009.

14. Since at least as early as May 10, 2001, Plaintiff and its predecessors in interest have continuously used the Registered Mark in interstate commerce in connection with restaurant services.

15. Plaintiff and its predecessors in interest have invested substantial time, effort, and money in advertising, promoting, and marketing restaurant services under the Registered Mark, including through print, digital, and social-media advertising, as well as through third-party recognitions and community engagement.

16. As a result of such continuous and substantial use, advertising, and promotion of the Registered Mark, consumers have come to recognize the Registered Mark as identifying restaurant services originating with Plaintiff, and the Registered Mark has acquired substantial goodwill of considerable value.

17. Plaintiff and its predecessors in interest have actively policed and enforced the Registered Mark against third-party users of confusingly similar marks. For example, on June 23, 2006, Plaintiff's predecessor in interest, Wild Willy's Holding Company, Inc., filed a civil action for infringement of the Registered Mark against William Palladino d/b/a The Potting Shed Restaurant in the United States District Court for the District of Maine, captioned *Wild Willy's Holding Company, Inc. v. Palladino*, Civil No. 2:06-cv-00111-GC. On January 22, 2007, the court entered a Stipulated Judgment permanently enjoining the defendants and all persons acting in concert with them from using "Wild Willy's," a commercial designation combining "Wild" with "Willy's" or "Willie's," or any other commercial designation which is confusingly similar to Plaintiff's Registered Mark. True and correct copies of the complaint and Stipulated Judgment are attached as **Exhibit 1** and **Exhibit 2** respectively. Plaintiff and its predecessors in interest have not

acquiesced in, consented to, or ignored Defendant's or any other third party's use of the Registered Mark or any confusingly similar mark.

18. Plaintiff operates and has licensed others to operate restaurants under the Registered Mark in multiple locations, including a restaurant in Rochester, New Hampshire within this judicial District (the "Rochester Restaurant"). The Rochester Restaurant is operated by Plaintiff's licensee under license from, and under quality controls established by Plaintiff. Plaintiff and its licensee share identical membership.

19. Defendant Buffalo Wild Wings, Inc. owns, operates, licenses, and/or franchises a nationwide chain of restaurants, including restaurants located within this judicial district.

20. On information and belief, Defendant is one of the largest restaurant chains in the United States, operating or franchising hundreds of restaurant locations nationwide and generating annual revenues in the hundreds of millions of dollars. Defendant is a wholly-owned subsidiary of Inspire Brands, Inc., a multi-brand restaurant conglomerate with annual revenues in the billions of dollars that also owns Arby's, Sonic, Dunkin', Jimmy John's, Baskin-Robbins, and Rusty Taco.

21. Defendant has adopted and used the designation WILD BURGER (the "Infringing Mark") in connection with restaurant services, including hamburger-centric restaurant services directly competitive with those offered by Plaintiff under the Registered Mark.

22. On information and belief, Defendant operates "Wild Burger" as a virtual restaurant brand (also known as a "ghost kitchen"), meaning that Defendant does not operate standalone physical restaurants bearing the Wild Burger name, but instead prepares Wild Burger food within existing Buffalo Wild Wings restaurant kitchens and offers Wild Burger exclusively through third-party online delivery platforms, including GrubHub, DoorDash, Uber Eats, and Seamless.

23. At the point of sale on these third-party delivery platforms, Defendant historically did not display or disclose its Buffalo Wild Wings corporate identity in connection with the Infringing Mark in any manner that would permit an ordinary consumer to understand that "Wild Burger" was operated by Buffalo Wild Wings. Consumers viewing Defendant's listings were therefore led to believe that "Wild Burger" was the full and sole identifier of the restaurant from which they were ordering, which magnified the likelihood that consumers would confuse Defendant's Wild Burger with Plaintiff's WILD WILLY'S BURGERS.

24. On information and belief, Defendant operates multiple virtual restaurant brands in addition to Wild Burger. Defendant's development, launch, and operation of such virtual brands reflects a deliberate corporate business strategy, undertaken with sophisticated awareness of restaurant branding and trademark issues.

25. On information and belief, food-industry media coverage has identified Wild Burger as a virtual restaurant brand operated by Buffalo Wild Wings. Despite that industry-level understanding of Wild Burger's corporate parentage, consumers viewing Defendant's third-party delivery-platform listings have been and continue to be presented with the designation "Wild Burger" without disclosure of the Buffalo Wild Wings connection in a manner that would allow an ordinary consumer to understand the source of the services.

26. Defendant adopted and began using the Infringing Mark long after Plaintiff and its predecessors in interest began using the Registered Mark, long after the Registered Mark was federally registered, and long after the Registered Mark obtained incontestable status under 15 U.S.C. § 1065.

27. The federal registration of the Registered Mark constitutes constructive notice of Plaintiff's claim of ownership in the Registered Mark pursuant to 15 U.S.C. § 1072, and Defendant therefore

had constructive notice of Plaintiff's rights before Defendant adopted and began using the Infringing Mark.

28. On information and belief, Defendant is a sophisticated national restaurant operator that routinely conducts trademark clearance searches and files trademark applications in connection with its brands and brand extensions. Any reasonable trademark clearance search for the mark WILD BURGER in connection with restaurant services would have disclosed Plaintiff's federally registered, incontestable WILD WILLY'S BURGERS mark. On information and belief, Defendant either conducted such a search before adopting the Infringing Mark or deliberately avoided doing so, and in either case Defendant adopted the Infringing Mark with actual or willfully blind knowledge of Plaintiff's superior rights in the Registered Mark.

29. The Infringing Mark is confusingly similar to the Registered Mark in sight, sound, meaning, and overall commercial impression.

30. Defendant uses the Infringing Mark in connection with services that are identical to, or that directly overlap with, the restaurant services covered by Plaintiff's incontestable federal registration of the Registered Mark.

31. The restaurant services covered by Plaintiff's incontestable federal registration of the Registered Mark include, in particular, hamburger-centric restaurant services. Defendant's Wild Burger offering is likewise centered on hamburger-centric restaurant services. The two offerings therefore occupy the identical niche within the broader restaurant services category.

32. Plaintiff and Defendant market and offer their respective restaurant services through overlapping channels of trade and to overlapping classes of ordinary consumers, including diners who patronize restaurant services featuring hamburgers.

33. The restaurant services offered by Plaintiff and Defendant are relatively low-cost consumer transactions purchased with ordinary consumer attention. Consumers of these services do not typically engage in detailed source inquiry before purchase, which heightens the likelihood that Defendant's use of the Infringing Mark will cause confusion as to the source, sponsorship, or affiliation of Defendant's services.

34. The Rochester Restaurant and Defendant operate directly head-to-head in Rochester, New Hampshire. Defendant operates a Buffalo Wild Wings restaurant at 160 Washington Street, Rochester, New Hampshire, and operates its "Wild Burger" virtual delivery brand from that same location, serving the same Rochester consumer base. Plaintiff through the Rochester Restaurant and Defendant therefore compete directly for the same local consumers in the same geographic market in Rochester, New Hampshire, materially increasing the likelihood that consumers in that market will be confused as to the source, sponsorship, or affiliation of Defendant's services.

35. Defendant's unauthorized use of the Infringing Mark is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, connection, or approval of the parties' respective restaurant services, in two complementary directions. First, consumers encountering Defendant's Wild Burger offering are likely to believe mistakenly that Defendant's goods and services originate with, are sponsored by, or are affiliated with Plaintiff (forward confusion). Second, because Defendant is a nationally recognized restaurant chain with substantially greater market presence, advertising reach, and consumer recognition than Plaintiff, consumers encountering Plaintiff's WILD WILLY'S BURGERS restaurants are also likely to believe mistakenly that Plaintiff is a licensee, affiliate, derivative outlet, or sponsored concept of Defendant – the reverse of the actual chronological and legal priority between the parties, which runs in Plaintiff's favor by more than two decades (reverse confusion). Plaintiff pleads forward

confusion and reverse confusion in the alternative pursuant to Fed. R. Civ. P. 8(d) as independent and complementary bases for liability on each count below. Both theories cause distinct and compounding injuries, including the loss of Plaintiff's control over the quality, identity, and reputation of goods and services associated with the Registered Mark.

36. The acts of infringement and the resulting consumer confusion complained of in this action have occurred and continue to occur within this District, including through Defendant's offering, advertising, and sale of restaurant services under the Infringing Mark to New Hampshire consumers, and through actual instances of consumer confusion occurring within this District as further alleged below.

37. One example of Defendant's use of the Infringing Mark is a GrubHub page for Defendant's New Hampshire location at 160 Washington Street in Rochester which prominently displays the wording "Wild Burger" alone in large and bold font as shown in **Exhibit 3** to this complaint showing a Screenshot from August of 2025 of the GrubHub page.

38. Another one of Defendant's locations in Nashua, New Hampshire has the same GrubHub page prominently featuring the wording "Wild Burger" in bold and large font as shown in **Exhibit 4** to this Complaint showing a Screenshot from June of 2025 of the GrubHub page.

39. On its DoorDash page for Rochester New Hampshire, Defendant also prominently displayed the wording "Wild Burger" as shown in **Exhibit 5** to this Complaint showing a Screenshot from August of 2025 of the DoorDash page.

40. Defendant's use of "Wild Burger" similarly appeared on GrubHub, DoorDash, and other online food delivery platforms across the nation.

41. When a consumer searches for "wild burger by buffalo wild wings Rochester new hampshire" on Google, WILD WILLY'S BURGERS location shows up and right underneath this,

a link to Defendant's Seamless page with Defendant's phone number with the prominent wording "Wild Burger" as shown in **Exhibit 6** to this Complaint showing a Screenshot from August of 2025 of Wild Willy's Burgers Rochester, New Hampshire Google listing.

42. The confusion caused by Defendant's use of the Infringing Mark extends beyond individual consumers to third-party search engines and artificial-intelligence systems. Searches performed on major search engines, including Google and Bing, for the term "Wild Burger" return search results and artificial-intelligence overviews that conflate Plaintiff's WILD WILLY'S BURGERS restaurants with Defendant's Wild Burger ghost-kitchen offering. When queried about "Wild Burger" in Rochester, New Hampshire, artificial-intelligence assistants – including Anthropic's Claude and Google's Gemini – respond with information about Plaintiff's WILD WILLY'S BURGERS restaurants rather than Defendant's Wild Burger. Representative screenshots of these search-engine and artificial-intelligence results are included within **Exhibit 7**. The fact that artificial-intelligence systems trained on vast quantities of commercial and consumer-facing content cannot reliably distinguish between Plaintiff's and Defendant's designations further demonstrates that ordinary consumers, exercising only ordinary care, cannot and do not do so either.

43. On June 11, 2025, Plaintiff served Defendant a written demand that Defendant, among other things, cease and desist from using the Infringing Mark.

44. On July 10, 2025, Defendant responded in writing and refused to cease use of the Infringing Mark.

45. On August 5, 2025, Plaintiff served a second written demand letter reiterating that Defendant cease and desist from using the Infringing Mark.

46. Despite Plaintiff's repeated demands, Defendant has refused to cease use of the Infringing Mark and continues to use the Infringing Mark to this day.

47. On information and belief, in or about late July of 2026, and more than one year after refusing Plaintiff's June 2025 demand to cease use of the Infringing Mark, Defendant began modifying its online ordering-platform listings to add the words "by Buffalo Wild Wings" following "Wild Burger."

48. On information and belief, Defendant began making these modifications in acknowledgement of the consumer confusion that Defendant's use of "Wild Burger" was causing and in anticipation of further enforcement action by Plaintiff.

49. The modification remains incomplete across Defendant's listings, and even where the words "by Buffalo Wild Wings" have been added, "WILD BURGER" remains the dominant and most prominent element, appears as the first element in the listing, and continues to appear alone in Defendant's logo, URLs, menu headers, and various other customer-facing contexts. *See* **Exhibit 7**.

50. Defendant's modification of its online listings does not cure the likelihood of consumer confusion, because: (a) "WILD BURGER" remains the dominant and source-identifying portion of Defendant's modified mark and (b) "WILD BURGER" continues to appear alone in URLs, delivery-platform search results, menu headers, oral references, and Defendant's logo.

51. On multiple occasions the consuming public has actually been confused believing that Plaintiff was the source of the food and services offered under Defendant's Infringing Mark.

52. For example, a consumer who, upon information and belief, had purchased a meal from Defendant left a comment on a post on the Wild Willy's Burgers Rochester Facebook Page stating:

"I ordered a burger and fries from [here] yesterday. DoorDash got the wrong order and I have to tell you it was probably the worst thing I've ever eaten." *See* **Exhibit 8.**

53. Upon receiving this post a response was posted by Wild Willy's Burgers Rochester stating "Hello! Thanks for your note. We currently do not offer delivery services like Door dash, Uber Eats, etc. We suspect you got a burger from 'Wild Burger'. This is a virtual restaurant that was setup (not too long ago) by Buffalo Wild Wings that does delivery only and offers only the burger portion of their menu online. Its name is very similar to ours . . . so it can be very confusing. We're sorry for your experience regardless, and we hope to welcome you to Wild Willy's Burgers soon!" *Id.*

54. The consumer then responded "Wild Willy's Burger Rochester than[k] you!!! I've never had a bad meal from your establishment." *Id.*

55. Since at least March of 2025, Plaintiff's Rochester, New Hampshire restaurant has experienced consistent and recurring instances of consumer confusion caused by Defendant's use of the Infringing Mark. These instances have occurred, and continue to occur several times per quarter, and have cumulatively comprised at least eleven separate documented incidents with even more instances being undocumented.

56. On numerous separate occasions since September of 2025, consumers have walked into Plaintiff's Rochester, New Hampshire restaurant seeking to inquire about or complain about orders that they had placed through third-party online delivery platforms, including GrubHub, DoorDash, Uber Eats, and Seamless. In each such instance, upon investigation by Plaintiff's staff, the consumer's order had in fact been placed with Defendant's "Wild Burger" and not with Plaintiff.

57. On numerous separate occasions since June of 2025, third-party delivery drivers acting on behalf of GrubHub, DoorDash, Uber Eats, and/or Seamless have arrived at Plaintiff's Rochester,

New Hampshire restaurant attempting to pick up food orders for delivery to Defendant's customers. In each such instance, upon investigation, the orders had in fact been placed for Defendant's "Wild Burger" and were being prepared at Defendant's Buffalo Wild Wings restaurant at 160 Washington Street, Rochester, New Hampshire. The misdirection of professional delivery drivers, who are repeat users of the delivery-platform applications and who have the restaurant pickup location displayed on their mobile devices, demonstrates the pervasive nature of the confusion caused by Defendant's use of the Infringing Mark.

58. On numerous separate occasions since at least March of 2025, consumers have telephoned Plaintiff's Rochester, New Hampshire restaurant asking about the status of food orders they had placed, complaining about order quality or incorrect items, requesting refunds, or asking when their deliveries would arrive. In each such instance, Plaintiff had no record of the order, and investigation revealed that the consumer had in fact placed the order with Defendant's "Wild Burger", not with Plaintiff.

59. Defendant's use of the Infringing Mark has resulted and will continue to result in loss of control by Plaintiff over the quality and reputation of goods and services associated with the Registered Mark. Because Plaintiff is the owner of the Registered Mark, consumer confusion as to the source of goods and services bearing the Registered Mark – including confusion that misdirects consumers to or from a licensed location of Plaintiff's – injures Plaintiff's goodwill in the Registered Mark, irrespective of which licensed location of Plaintiff's experienced the specific confusion incident and because Plaintiff and the Rochester Restaurant's operating entity share identical membership, the economic consequences of such confusion flow to the same persons who own Plaintiff. As demonstrated by the Facebook exchange described in the preceding paragraphs, consumers have attributed to Plaintiff negative food experiences actually caused by

Defendant's product. On information and belief, additional similar instances have occurred and continue to occur. Plaintiff cannot control the quality of goods or services offered by Defendant under the Infringing Mark, yet consumers may attribute those goods and services, and any dissatisfaction with them, to Plaintiff.

60. On information and belief, Defendant adopted and continues to use the Infringing Mark with knowledge of Plaintiff's superior rights in the Registered Mark and with the intent to trade upon the goodwill associated with the Registered Mark.

61. Defendant has used, and unless enjoined will continue to use, the Infringing Mark without the consent or authorization of Plaintiff.

62. Defendant's acts complained of herein have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT I

## Federal Trademark Infringement (15 U.S.C. § 1114)

63. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

64. Plaintiff is the owner of the Registered Mark. The Registered Mark is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.

65. Defendant's unauthorized use in commerce of the Infringing Mark in connection with the offering, advertising, sale, and distribution of restaurant services is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, sponsorship, affiliation, or approval of Defendant's services, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66. On information and belief, Defendant's acts of infringement have been and continue to be deliberate, willful, and in bad faith.

67. As a direct and proximate result of Defendant's acts, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial. Plaintiff is entitled to injunctive relief, Defendant's profits, Plaintiff's damages, enhanced damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT II

## False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))

68. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

69. Defendant's unauthorized use in commerce of the Infringing Mark in connection with restaurant services constitutes a false designation of origin and a false or misleading description or representation of fact that is likely to cause confusion, to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70. On information and belief, Defendant's acts have been and continue to be deliberate, willful, and in bad faith.

71. As a direct and proximate result of Defendant's acts, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial. Plaintiff is entitled to injunctive relief, Defendant's profits, Plaintiff's damages, enhanced damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT III

## Common Law Trademark Infringement and Unfair Competition

72. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

73. Plaintiff owns and has owned, by itself and through its predecessors in interest, common-law trademark rights in the Registered Mark in New Hampshire and throughout the United States in connection with restaurant services.

74. Defendant's unauthorized use of the Infringing Mark in connection with restaurant services is likely to cause confusion, mistake, or deception, and constitutes trademark infringement and unfair competition under the common law of the State of New Hampshire.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial. Plaintiff is entitled to injunctive relief and all other remedies available at common law.

**COUNT IV**

**Violation of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A)**

76. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

77. Defendant has engaged, and continues to engage, in "trade" and "commerce" within the meaning of N.H. Rev. Stat. Ann. § 358-A:1 by offering, advertising, and selling restaurant services to consumers within the State of New Hampshire.

78. Defendant's unauthorized use of the Infringing Mark in connection with restaurant services offered to New Hampshire consumers constitutes an unfair or deceptive act or practice in the conduct of trade or commerce in violation of N.H. Rev. Stat. Ann. § 358-A:2, including without limitation subsections V, VII, and VIII thereof, in that it (a) represents that Defendant's services have sponsorship, approval, or affiliations that they do not have, (b) passes off Defendant's

services as those of, or as affiliated with, Plaintiff, and (c) uses designations that are confusing and are likely to cause consumer confusion as to the source, sponsorship, approval, or certification of Defendant's services.

79. On information and belief, Defendant's conduct constitutes a willful or knowing violation of N.H. Rev. Stat. Ann. § 358-A:2.

80. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages. Plaintiff is entitled to actual damages or $1,000, whichever is greater, enhanced damages of up to three times actual damages for Defendant's willful or knowing conduct, injunctive relief, reasonable attorneys' fees, and costs, all pursuant to N.H. Rev. Stat. Ann. § 358-A:10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Beacon Hospitality, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Buffalo Wild Wings, Inc. as follows:

A. Preliminarily and permanently enjoining Defendant, its officers, directors, agents, servants, employees, attorneys, successors, assigns, licensees, franchisees, and all persons acting in concert or participation with any of them, from using the designation WILD BURGER, whether used alone or as part of any combined designation (including without limitation "WILD BURGER BY BUFFALO WILD WINGS"), as part of any logo, menu, URL, domain name, social-media handle, hashtag, or any other customer-facing use, or any other designation confusingly similar to Plaintiff's Registered Mark, in connection with restaurant services or any related goods or services;

B. Ordering Defendant to deliver up for destruction, or to show proof of destruction of, all signage, menus, labels, advertising, promotional materials, packaging, and any other

materials in Defendant's possession, custody, or control bearing the Infringing Mark, pursuant to 15 U.S.C. § 1118;

C. Directing Defendant to file with the Court and serve on Plaintiff, within thirty (30) days after entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

D. Awarding Plaintiff all damages suffered by Plaintiff as a result of Defendant's acts, together with Defendant's profits from the sale of goods and services under the Infringing Mark, pursuant to 15 U.S.C. § 1117(a);

E. Trebling or otherwise enhancing the award of damages against Defendant pursuant to 15 U.S.C. § 1117(a) and N.H. Rev. Stat. Ann. § 358-A:10 in view of the willful and deliberate nature of Defendant's acts;

F. Declaring this to be an exceptional case and awarding Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and N.H. Rev. Stat. Ann. § 358-A:10;

G. Awarding Plaintiff its costs of suit and expenses incurred in connection with this action;

H. Awarding Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law; and

I. Granting Plaintiff such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated this 20th day of October 2026

**Sam IP Legal Solutions, P.C.**

By *<u>/s/ Ryan D. Sam</u>*
Ryan D. Sam, Registration No. 281,688
*Attorney for Plaintiff*